```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS
```

**CODY LEE CHAMBERS,**

                **Plaintiff,**

      **v.**                                **CASE NO.  13-3114-SAC**

**KEN BADSKY,**

                **Defendant.**

## MEMORANDUM AND ORDER

Upon screening the original complaint filed herein, the court entered an Order (Doc. 6) requiring plaintiff to show cause why this action should not be summarily dismissed as stating no claim for relief. Thereafter, Mr. Chambers responded by filing an Amended Complaint (Doc. 9) and a "Motion to Show Cause as Ordered," which was docketed as his response (Doc. 11). The court is required to screen plaintiff's Amended Complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Having considered all the materials in the file, the court concludes that this action must be dismissed for failure to state facts sufficient to support a federal constitutional claim.

**FACTUAL BACKGROUND AND CLAIMS**

1

In his Amended Complaint, Mr. Chambers sets forth the following background facts. On February 25, 2013, during his confinement at the Decatur County Jail in Oberlin, Kansas, he received mail from attorney Steven Sherwood of Legal Services for Prisoners that was properly marked as legal mail. This mail was opened and read outside his presence by defendant Ken Badsky, Sheriff of Decatur County. When Undersheriff Marcum handed plaintiff the mail, plaintiff asked why it was opened, and Marcus responded that defendant Badsky "had opened and read it not him." Three fellow inmates witnessed Marcum's delivery of the opened mail and Marcum's statement.

As factual support for his assertions of First Amendment violations in particular, plaintiff makes the following additional allegations. The letter from attorney Sherwood "was about specific actions" under the Kansas habeas statutes "for (his) case in Decatur County" and "his perusal to appeal" that case, and came with an appeal form attached. Attorney Sherwood asked plaintiff "to provide more information as to the nature of the action (plaintiff) was going to take."[1] Plaintiff could not provide the information requested by attorney Sherwood "because of (his) fear that the defendant would read it." The prosecutor in his criminal case, Decatur County Attorney Steve Hirsh, stated to plaintiff's appointed attorney Mark Whitney that "if (plaintiff) planned to file a habeas corpus case

---

[1] In his original complaint, plaintiff alleged only that the "mail contained an article I had planned to use on my case and a letter from" attorney Sherwood.

or pursue" an appeal, Hirsh "would give (plaintiff) all the time" he could. The only way for Hirsh "to know about that subject matter" would be from defendant Badsky opening and reading plaintiff's legal mail and "reporting it" to Hirsh. Plaintiff's fear of "getting more prison or jail time" rendered him unable to "properly raise a defense in (his) case" and pursue an appeal or habeas corpus action. Defendant acted "with an evil intent and motive" and "with very improper motive."

As Count I in his Amended Complaint, plaintiff asserts that defendant Badsky violated his First Amendment rights to freedom of speech, to be free of censorship, to petition the Government for redress of grievances, and of access to the courts. As Count II, he asserts that defendant violated his Sixth Amendment right to assistance of counsel. As Count III, plaintiff asserts violation of due process, privileges and immunities, liberty and property.

In his response (Doc. 11), plaintiff mainly cites several legal opinions with no discussion as to how they relate to the facts of his case. His only fact allegations therein are that he filed an Amended Complaint "to state more facts," and hopes for the court to "construct the Original Complaint with the Amended Complaint."[2]

---

[2]   An Amended Complaint completely supersedes the original complaint, and the original complaint is no longer before the court. Thus, plaintiff's references to his original complaint could be disregarded. Nevertheless, in determining this matter the court has considered those portions of plaintiff's original complaint that he specifically referred to in his Amended Complaint.

Plaintiff seeks a declaration that "the acts and omissions described" in his complaint violated his federal constitutional rights. He also seeks injunctive relief in the form of an order requiring defendant to set standard rules and grievance procedures at the Decatur County Jail. In addition, he seeks nominal and punitive damages.

**LEGAL STANDARDS**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct

a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Plaintiff claims a violation of due process. The Tenth Circuit Court of Appeals has plainly held that prison inmates have no federal constitutional right to a grievance procedure while incarcerated. See *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009); *Walters v. Corrections Corp. of America*, 119 Fed.Appx. 190, 191 (10th Cir. 2004), *cert. denied*, 546 U.S. 865 (2005); *Sims v. Miller*, 5 Fed.Appx. 825, 828 (10th Cir. 2001)([I]nsofar as plaintiff contended that CDOC officials failed to comply with the prison grievance procedures, he failed to allege the violation of a federal constitutional right.").

Plaintiff also asserts that defendant violated his Sixth Amendment right to "proper assistance of counsel." The Sixth and Fourteenth Amendments to the U.S. Constitution guarantee the right of an indigent defendant to counsel at the trial stage of a criminal proceeding.[3] *Murray v. Giarratano*, 492 U.S. 1, 7 (1989)(citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)); *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970)(The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[4])). "[A]n

---

[3] This includes an inmate's right to privately discuss his case with counsel. See *Geder v. United States*, 425 U.S. 80 (1976).

[4] The Sixth Amendment's right to counsel simply "does not govern civil cases." Turner v. Rogers, --- U.S. ----, 131 S.Ct. 2507, 2516 (2011); *cf. Martinez v. Ryan*,

indigent defendant is similarly entitled as a matter of right to counsel for an initial appeal from the judgment and sentence of the trial court."  *Id*. at 7 (citing *Douglas v. California*, 372 U.S. 353, (1963); *Griffin v. Illinois*, 351 U.S. 12 (1956)).  On the other hand, in *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987), the Court held that there is no federal constitutional right to counsel for indigent prisoners seeking state post-conviction relief.  See *Murray*, 492 U.S. at 8 ("Post-conviction relief is even further removed from the criminal trial" and "is not part of the criminal proceeding itself," but "is in fact considered to be civil in nature.").  Thus, with respect to the reading of an inmate's mail as well, the Sixth Amendment's "reach is only to protect the attorney-client relationship from intrusion in the criminal setting."  *Wolff*, 418 U.S. at 576.

In considering plaintiff's claim of violation of his right to free speech, the following standards apply.  Generally, "prisoners retain the right to send and receive mail."  See *Thornburgh v. Abbott*, 490 U.S. 401 (1989).[5]  However, that right does not preclude

---

---U.S.---, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012)(lack of counsel in post-conviction proceedings can constitute cause to excuse procedural default of ineffective assistance of trial counsel claim in jurisdiction where such claim may not be raised on direct appeal.).

[5]   The First Amendment prohibits the abridgement of the freedom of speech. U.S. Const. Amend. I.  Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment. See *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)("A prohibition on the use of the mails is a significant restriction of First Amendment rights.).

prison officials from examining mail for security and other legitimate penological purposes. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Furthermore, courts have long held that the inadvertent, negligent mishandling of an inmate's mail does not violate the Constitution. *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005)(When access to the courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs.); *Bruscino v. Carlson*, 654 F.Supp. 609 (S.D.Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988), *cert. denied*, 491 U.S. 907 (1989). On the other hand, courts have "not hesitated to find a violation" where a policy of opening mail outside inmates' presence has been shown. See e.g. *Kalka v. Megathlin*, 10 F.Supp.2d 1117, 1123 (D.Ariz. 1998), *aff'd* 188 F.3d 513 (9th Cir. 1999)("[A]n occasional opening of legal mail outside the inmate's presence does not rise to the level of a violation, though a policy of doing so is a violation."); *Jones v. Brown*, 461 F.3d 353, 359 (3rd Cir. 2006)(a prison's practice of opening attorney mail "interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech.").

Plaintiff's main claim is that he was denied access to the courts. Prison inmates have a constitutional right to "meaningful

access to the courts." See *Bounds v. Smith*, 430 U.S. 817, 823 (1977). "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983); see also *Wolff*, 418 U.S. at 576; *Al- Amin*, 511 F.3d at 1331. The Supreme Court has held that "in order to assert a claim arising from the denial of meaningful access to the courts, an inmate must first establish an actual injury." *Lewis v. Casey*, 518 U.S. 343, 349, 351-53 (1996)(an inmate claiming denial of access to the courts must satisfy the standing requirement of "actual injury."); *Simkins v. Bruce*, 406 F.3d 1239, 1243-44 (10th Cir. 2005); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)(An inmate alleging interference with legal access must allege specific facts showing that a "distinct and palpable" injury resulted from defendants' conduct."); *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998)("To present a viable claim for denial of access to courts . . . an inmate must allege and prove prejudice arising from Defendants' actions."). Plaintiff may show injury by alleging actual prejudice to contemplated or existing litigation such as the inability to meet a filing deadline or to present a claim, or that a nonfrivolous legal claim has been dismissed or impeded. *Simkins*, 406 F.3d at 1242 (citing *Lewis*, 518 U.S. at 351-53 & n. 3); *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996)("an inmate must satisfy the standing requirement of 'actual

injury' by showing" that defendant "hindered the prisoner's efforts to pursue a nonfrivolous claim"). Conclusory allegations of injury will not suffice. *Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006)(citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999)); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). Furthermore, the Tenth Circuit and other Circuit Courts have specifically held that an isolated incident of opening legal mail outside of the inmate's presence does not violate the Constitution. See *Maschner*, 899 F.2d at 944; *Berger v. White*, 12 Fed.Appx. 768, 771 (10th Cir. 2001)(unpublished)(a single incident of a prison official opening an inmate's constitutionally protected legal mail does not support a civil rights claim); see also *Brewer v. Wilkinson*, 3 F.3d 816, 825 (5th Cir. 1993), *cert. denied*, 510 U.S. 1123 (1994); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)(isolated, single instance of opening incoming confidential legal mail does not support a constitutional claim).

### DISCUSSION

#### 1. *Failure to State Claim of Denial of Due Process*

The only factual allegation made by plaintiff specifically to support his assertion of a due process violation is that defendant Badsky did not set "standard rules and grievance procedures" for

inmates, his employees, or himself at the Decatur County Jail (DCJ),[6] and this violated "proper processes." Plaintiff does not point to any particular rule that defendant failed to set and explain how he was injured as a result. His allegation that defendant did not "set" a grievance procedure fails to state a claim because there is no entitlement under the federal Constitution to a grievance procedure at a jail or prison. Thus, defendant's alleged failure to provide rules governing grievances at the DCJ, taken as true, simply does not rise to the level of a constitutional violation.[7]

### 2. *Failure to State Claim of Interference with Sixth Amendment Right to Counsel*

As factual support for his Sixth Amendment claim in particular, Mr. Chambers alleges that "because of defendant's actions" and "for fear of serving more time," he and his court-appointed attorney "did not have a fair chance" to defend plaintiff. These vague and conclusory allegations do not suggest how defendant Badsky's opening and reading the mail from Sherwood, who was not plaintiff's appointed counsel, could plausibly have prevented plaintiff and his appointed

---

[6] Under Count III, plaintiff also baldly asserts that the opening and reading of his mail improperly deprived him of "liberty and property" and "privileges or immunities." However, he alleges no facts to support these distinct assertions, and the sparse facts he does allege do not patently evince such deprivations. These bald assertions are not considered further.

[7] Plaintiff does not claim that his right of court access was impeded by defendant's failure or refusal to answer his grievances.

counsel Mark Whitney from raising a defense in his criminal case.[8] Such a conclusion does not logically follow from plaintiff's description of the mail's content, and given that Sherwood wrote about an appeal or a state habeas action, it appears that plaintiff's criminal trial had concluded before the mail incident. Likewise, plaintiff's conclusory allegations do not suggest how the mail incident plausibly caused him to fear serving more time. Furthermore, plaintiff alleges no facts indicating how defendant Badsky's handling of Sherwood's mail interfered with his right to consult with his criminal defense attorney Whitney. As explained earlier, plaintiff's Sixth Amendment right to counsel is limited to protecting "the attorney-client relationship from intrusion in the criminal setting." The court concludes that plaintiff alleges no facts that evince a violation of his Sixth Amendment right to counsel.

### 3. *Failure to State Claim of First Amendment Violation*

Plaintiff fails to allege sufficient facts to support any of his assertions of First Amendment violations. His assertion of censorship is supported by no facts whatsoever. He does not allege that defendant Badsky withheld any portion of Sherwood's mail or

---

[8] Plaintiff does not reveal what viable defense he was allegedly prevented from presenting in his criminal case. Moreover, he does not allege that he has exhausted state court remedies on this claim. Furthermore, "a state prisoner's claim for damages is not cognizable under § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." See *Edwards v. Balisok*, 520 U.S. 641, 643 (1997)(quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).

censored it in any manner. See *Walker v. Navarro County Jail*, 4 F.3d 410 (5th Cir. 1993)(Inmate's allegation that his incoming legal mail was opened and read but not censored does not rise to level of constitutional violation).

Mr. Chambers baldly asserts that the opening and reading of his legal mail violated his First Amendment right of free speech. However, he does not allege facts to support this assertion. He does not allege that defendant censored or refused to deliver his mail from Sherwood. Nor does he allege facts plausibly indicating that this single incident sufficiently chilled, inhibited, or interfered with his ability to speak, protest, or complain openly to correspondent Sherwood or his appointed attorney.[9] The only

---

[9] The Eleventh Circuit, like the Third Circuit, has found a "free speech right to communicate with [one's] attorneys by mail, separate and apart from his constitutional right to access the courts." *Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir.), *cert. denied,* 555 U.S. 820 (2008). A contrary view was expressed in *West v. Endicott*, 2008 WL 906225, *4-*6 (E.D.Wis. Mar. 31, 2008):

> It is not the message contained in legal mail that is curbed, but the confidentiality of that mail: the violation is one of secrecy rather than substance. Secrecy is not "speech," of course, but it is really only that secrecy that the Third and Eleventh Circuits are protecting as an "end in itself." . . . [T]he veil of secrecy that protects legal mail does not protect the content of any "speech" occurring outside of the legal context-no important political ideas or religious opinions are affected by a protection for legal mail. Obviously, then, the only purpose secrecy serves in the legal mail context is that it allows inmates to communicate more freely with their attorneys, which of course was the genesis of courts' heightened protections for legal mail in the first place. . . .
>
> . . . I conclude that when the allegation is merely that legal mail was improperly opened-rather than destroyed or delayed-the right is only actionable in this circuit to the extent the violation inhibits the inmate's ability to access the courts; the right to receive unopened legal mail is not, in other words, entitled to independent First Amendment protection.

allegation added in his Amended Complaint, that he could not respond to Sherwood's letter "because of (his) fear that defendant would read it," is nothing more than a conclusory statement.[10]  Plaintiff makes no attempt to explain why he could not either telephone or write attorney Sherwood back to answer his questions and discuss the transmitted information or at least to relay his fear of doing so and arrange some other means of communicating with Sherwood.  He offers no reason for the mail-reading incident to have rendered him too fearful to respond to Sherwood.

If plaintiff is asserting a violation of his First Amendment "right to receive mail per se," he also fails to allege facts in support.  He does not allege that defendant Badsky destroyed, confiscated, or even delayed delivery of Sherwood's letter.  Since the mail was delivered, Mr. Chambers received the information that attorney Sherwood intended to communicate to him.  In any event, as plaintiff was previously advised, he fails to state a constitutional claim because this matter involved a single isolated incident.

---

*Id.* (footnotes omitted); see also *Vasquez v. Raemisch*, 480 F.Supp.2d 1120, 1140 (W.D.Wis. 2007).

[10]   Moreover, plaintiff's allegation that defendant Badsky read his legal mail is based upon his hearsay statement of Marcum's hearsay statement that Badsky had read the mail.

Plaintiff has never alleged that the incident in question arose pursuant to a prison practice or regulation.[11]

The court rejects the "access-to-courts aspect" of plaintiff's claim for three main reasons.  First, Mr. Chambers has not made the showing of actual injury required by *Lewis*.  See *id.* at 349-53.  No doubt, a prison official's failure to deliver an inmate's mail may interfere with an inmate's First Amendment right of access to the courts via mail.  See *Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006).  However, as explained earlier, in order to establish a denial of access to the courts via interference with legal mail, a plaintiff "must show that non-delivery of his legal mail resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a legal claim."  *Simkins,* 406 F.3d at 1243; *Lewis*, 518 U.S. at 350-51; *Penrod*, 94 F.3d at 1403.  For example, in *Simkins*, 406 F.3d at 1243, the prison withheld an inmate's legal mail altogether, including a summary judgment motion filed in a civil action, and the delay adversely impacted his civil action.  The Tenth Circuit found injury, concluding that "the prejudice from the interference with plaintiff's legal mail is directly and inextricably tied to the adverse disposition of his underlying case and the loss of his right to appeal from that disposition."  *Id*. at 1244.

---

[11]   Consequently, analysis under *Turner v. Safley,* 482 U.S. 78 (1987), is not warranted.

Mr. Chambers fails to explain how the single mail incident at issue here hindered him from pursuing either an appeal or a state habeas action, as he claims. His own allegations indicate that the mail from Sherwood aimed to facilitate those two pursuits and that he received the information as intended. Plaintiff alleges no facts showing any actual impediment to either a criminal appeal or the filing of a state habeas corpus petition and provides no valid reason why he could not have proceeded to file either following this incident. He certainly does not explain how defendant's act of opening and reading plaintiff's incoming mail actually resulted in plaintiff missing a court deadline or having a non-frivolous legal claim dismissed. Plaintiff's conclusory statement, that defendant Badsky relayed information from Sherwood's letter to the prosecutor, is speculative at best[12] and evinces no such impediment. To the contrary, plaintiff's own allegation is that the prosecutor stated he would give plaintiff as much time as possible for either action. Plaintiff also fails to allege facts showing that he was pursuing a legal claim that was non-frivolous. He does not describe any issue he contemplated presenting on appeal in a specific criminal case[13]

---

[12] The filing of an appeal or a state habeas petition following a criminal conviction is a common occurrence, and the prosecutor's reference to these possible actions does not establish his awareness of the content of Sherwood's letter.

[13] Plaintiff alleged in his original complaint that at the time of this incident he was being held "on Decatur County District Court Case Number 2011-CR-51 along with "several" misdemeanor cases "including 2011-CR-37, 2012-CR-03 and 2012-CR-30, which were later dismissed." Kansas Department of Corrections (KDOC)

or any non-frivolous habeas corpus claim or claims he wanted to pursue in state court.

Secondly, plaintiff alleges no facts to support an inference that the incident upon which his complaint is based was the product of improper motive rather than inadvertence or mere negligence. His allegations that Badsky acted with an evil intent and improper motive are the only allegations he makes in this regard, and they are nothing but conclusory statements.

Finally, the incident of which Mr. Chambers complains was a single, isolated incident. Plaintiff has never alleged that defendant engaged in a pattern or practice of opening and reading his legal mail outside his presence. One incident of improperly opened and read legal mail fails to state a constitutional claim where, as here, there are no facts alleged to show improper motive or interference with an inmate's right to court access or counsel. *Maschner*, 899 F.2d at 943-44; *Bruscino v. Pugh*, 232 Fed.Appx. 763 (10th Cir. 2007); *Berger,* 12 Fed.Appx. at 771 (single incident of a prison official opening an inmate's constitutionally protected legal mail does not support a civil rights claim); *Davis v. Goord*, 320 F.3d 346, 351 (2nd Cir. 2003)(an isolated incident of legal mail tampering

---

records indicate that Mr. Chambers was discharged on November 15, 2013 but is currently "under supervision" on Ford County District Court Criminal Case 11-CR-476 for an offense that occurred in April 2011, for which he was sentenced on January 17, 2012. Plaintiff stated in his original complaint that the contents of the opened mail related to "the case I was being held for." However, he did not specify whether it was related to all his Decatur cases or only the one that was not "later dismissed."

16

does not violate the Constitution; instead, the inmate must show a pattern or practice of opening an inmate's legal mail outside his presence). Thus, while the opening and reading of an inmate's legal mail without cause by a County Sheriff or any jail official cannot be condoned, this court must conclude that the single incident described in this case does not state a federal constitutional violation so as to give rise to a claim under 42 U.S.C. § 1983.

**OTHER GROUNDS FOR DISMISSAL**

Plaintiff's claim for damages against defendant Badsky in his official capacity is dismissed for the reason that state officials have the same immunity as the State with respect to suits for money damages. Sovereign immunity is not a bar to plaintiff's claims against defendant Badsky in his individual capacity or for injunctive relief. However, plaintiff's claim for injunctive relief is dismissed because his transfer out of the Decatur County Jail rendered this claim moot. A party cannot maintain an action for injunctive relief unless a substantial likelihood of being injured in the future is demonstrated. *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991); *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)("[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."). Finally, plaintiff's claim for punitive damages is

17

also dismissed because he fails to allege the requisite facts in support. To obtain punitive damages under § 1983, plaintiff must show that defendants' conduct was "'motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference to the federally protected rights of others.'" *Jolivet v. Deland*, 966 F.2d 573, (10th Cir. 1992)(quoting *Smith v. Wade*, 561 U.S. 30, 56 (1983)). As noted, plaintiff's only allegation in this regard, that defendant opened his legal mail "with an evil intent and motive," is nothing more than a conclusory statement.

**PENDING MOTIONS**

Plaintiff's Motion for Extension of Time to File Response (Doc. 10) is dismissed as moot since his response was submitted shortly thereafter and the additional time he requested expired months ago. Plaintiff's Motion to Order Defendant to Respond to Complaint (Doc. 13) is denied because it presents no set of facts and no legal authority entitling him to the court action requested. Plaintiff alleges that he has "satisfied the requirements to state a claim," but the court has found otherwise. Furthermore, a defendant is not required to respond to a prisoner complaint and service need not be ordered unless and until the complaint has survived the screening process.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Extension of Time to File Response (Doc. 10) is dismissed as moot, and plaintiff's Motion to Order Defendant to Respond to Complaint (Doc. 13) is denied.

**IT IS FURTHER ORDERED** that this action is dismissed pursuant to 28 U.S.C. § 1915A(a) and (b) for failure to state facts to support a federal constitutional claim.

**IT IS SO ORDERED.**

Dated this 28th day of August, 2014, at Topeka, Kansas.

**s/Sam A. Crow**
**U. S. Senior District Judge**